# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39086**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Thomas E. BARKER**
Airman First Class (E-3), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 7 July 2017

————————————

*Military Judge:* James R. Dorman.

*Approved sentence:* Bad-conduct discharge, confinement for 30 months, forfeiture of all pay and allowances, and reduction to E-1. Sentence adjudged 16 May 2016 by GCM convened at McConnell Air Force Base, Kansas.

*For Appellant:* Major Annie W. Morgan, USAF.

*For Appellee:* Major J. Ronald Steelman III, USAF; Gerald R. Bruce, Esquire.

Before DREW, MAYBERRY, and J. BROWN, *Appellate Military Judges*.

Chief Judge DREW delivered the opinion of the court, in which Senior Judge MAYBERRY and Senior Judge J. BROWN joined.

————————————

**PUBLISHED OPINION OF THE COURT**

————————————

DREW, Chief Judge:

A military judge sitting as a general court-martial convicted Appellant, consistent with his pleas and pursuant to a pretrial agreement (PTA), of knowingly and wrongfully possessing child pornography and knowingly and

wrongfully viewing child pornography, both in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934.[1] The military judge sentenced Appellant to a bad-conduct discharge, confinement for 30 months, total forfeiture of all pay and allowances, and reduction to E-1. The convening authority approved the sentence as adjudged.[2]

On appeal, Appellant asserts one error: that the military judge erred when, in presentencing, he admitted three written victim impact statements purportedly from an individual identified in the child pornography Appellant possessed and viewed. We find that the military judge erred in admitting two of the three statements. In so doing, we address for the first time whether a victim impact statement written before an accused wrongfully possesses or views child pornography is admissible as an exercise of a victim's right to be reasonably heard at a sentencing hearing.

## I. BACKGROUND

Appellant admitted to knowingly and intentionally downloading and viewing approximately 155 videos and 12 photographs of children engaging in sexually explicit conduct between on or about 14 June 2014 and on or about 18 April 2015. The children in the videos and photographs appear to range in age from approximately 2 years old to about 16 years old. The Defense Computer Forensics Laboratory analyzed Appellant's electronic equipment and confirmed that the child pornography he possessed included 19 video files and 10 image files involving specific child victims who have been identified by the National Center for Missing and Exploited Children (NCMEC).[3] NCMEC identified KF as the victim depicted in one of the videos Appellant downloaded to his computer. NCMEC refers to that video and others on the Internet involving KF as the "Vicky series."

At Appellant's trial, the Prosecution offered what they claimed were victim impact statements from KF. The first was entitled "UPDATED VICTIM IMPACT STATEMENT FROM [redacted] SERIES VICTIM—December 2011." It was signed and sworn on 6 March 2012. The second was entitled

---

[1] A specification of knowingly and wrongfully distributing child pornography was dismissed with prejudice by the military judge pursuant to the pretrial agreement.

[2] The adjudged sentence was not affected by the PTA, which allowed for the approval of no more than four years of confinement.

[3] NCMEC, in conjunction with law enforcement, have confirmed certain persons portrayed in images and videos are actual minors by locating the individuals seen in the images and videos.

"Supplement to Victim Impact Statement of [redacted] Series Victim." It was signed on 31 January 2013. The third was entitled "UPDATED VICTIM IMPACT STATEMENT FROM [redacted] SERIES VICTIM—September 23, 2013." It was signed and sworn on 30 September 2013. None of the statements indicates that it was written by KF and only the January 2013 statement mentions the "Vicky series" anywhere in the statement. The name and signature of the declarants in each document were redacted. There were no accompanying affidavits or testimony to establish the origin of these documents, the circumstances of their creation, or where these documents were maintained. Instead, the assistant trial counsel merely proffered that the Prosecution received the documents from the Federal Bureau of Investigation (FBI), they were victim impact statements from KF, and they were "redacted already."[4] If the dates on the three letters were accurate, all of the documents were prepared before Appellant committed his offenses. The Prosecution offered the statements as a single Prosecution Exhibit and the military judge admitted it over Defense objection[5] during the presentencing portion of Appellant's trial.[6]

## II. DISCUSSION

Appellant asserts the military judge erred in considering, over Defense objection, the victim impact statements. We agree.

We review a military judge's admission or exclusion of evidence, including sentencing evidence, for an abuse of discretion. *United States v. Stephens*, 67 M.J. 233, 235 (C.A.A.F. 2009) (citing *United States v. Manns*, 54 M.J. 164, 166 (C.A.A.F. 2000)). "[T]hat discretion is abused when evidence is admitted

---

[4] The redactions to the titles of the documents were apparently done by the Prosecution, as they are different in appearance than the redactions to the declarant's name and signature (Adobe Acrobat-style black rectangle in the titles versus what appears to be white correction tape elsewhere), and the December 2011 statement was offered at the Article 32 preliminary hearing—without any redactions to the title.

[5] The Government asserts that Appellant forfeited his objections to the lack of foundation or authentication. Trial defense counsel objected "for a myriad of reasons," including not being able to tell who wrote the statements or whether the declarants had been given an opportunity to appear at the court-martial in person to provide a statement. Trial defense counsel's objection was sufficient to preserve the issues for appeal.

[6] The Prosecution also offered similar affidavits attributed to KF's mother and stepfather, to which the Defense also objected. The military judge sustained the objections and did not admit them.

based upon an erroneous view of the law." *United States v. Holt*, 58 M.J. 227, 230–31 (C.A.A.F. 2003). "The Military Rules of Evidence are applicable to sentencing, . . . thus providing procedural safeguards to ensure the reliability of evidence admitted during sentencing." *United States v. Saferite*, 59 M.J. 270, 273 (C.A.A.F. 2004) (omission in original) (quoting *United States v. McDonald*, 55 M.J. 173, 176 (C.A.A.F. 2001)); Military Rule of Evidence (Mil. R. Evid.) 1101. "[A]t the discretion of the military judge, [the rules] may be relaxed *for the defense* when it presents its evidence in extenuation or mitigation." *United States v. Boone*, 49 M.J. 187, 198 n.14 (C.A.A.F. 1998) (emphasis added); Rule for Court-Martial (R.C.M.) 1001(c)(3). If the military judge relaxes the rules for the defense, the rules may be relaxed during rebuttal by the prosecution to the same degree. R.C.M. 1001(d).

> Although the rules may be relaxed . . . otherwise inadmissible evidence still is not admitted at sentencing. *See United States v. Gudel*, 17 M.J. 1075, 1077 (AFCMR 1984) ("While it is true that the application of the rules of evidence may be relaxed in sentencing proceedings . . . , we, like the Court of Military Appeals, believe that the rules are not so relaxed as to eliminate the requirement that the government demonstrate that the proffered evidence meets generally accepted standards of relevance, materiality and reliability.").

*Boone*, 49 M.J. at 198 n.14.

Generally, the admission of evidence in aggravation during presentencing is controlled by R.C.M. 1001(b)(4), which states:

> The trial counsel may present evidence as to any aggravating circumstances directly relating to or resulting from the offenses of which the accused has been found guilty. Evidence in aggravation includes, but is not limited to, evidence of financial, social, psychological, and medical impact on or cost to any person or entity who was the victim of an offense committed by the accused . . . .

In addition to aggravation evidence offered by the prosecution, a crime victim has an independent "right to be reasonably heard at a sentencing hearing." R.C.M. 1001A(a). "If the victim exercises the right to be reasonably heard, the victim shall be called *by the court-martial*. This right is independent of whether the victim testified during findings or is called to testify under R.C.M. 1001." *Id.* (emphasis added). "In non-capital cases . . . the 'right to be reasonably heard' means the right to make a sworn or unsworn statement." R.C.M. 1001A(b)(4)(B). "The content of statements . . . may include victim impact or matters in mitigation." R.C.M. 1001A(c). "'[V]ictim impact' includes

any financial, social, psychological, or medical impact on the victim directly relating to or arising from the offense of which the accused has been found guilty." R.C.M. 1001A(b)(2). A victim who chooses to make an unsworn statement "may not be cross-examined by the trial counsel or defense counsel upon it or examined upon it by the court-martial. The prosecution or defense may, however, rebut any statements of facts therein. The unsworn statement may be oral, written, or both." R.C.M. 1001A(e). A victim is not required to provide a copy of an unsworn statement to the trial counsel, defense counsel, and military judge until after the announcement of findings, and the military judge may waive this requirement for good cause shown. R.C.M. 1001A(e)(1).

R.C.M. 1001A is the President's implementation of Article 6b, which was added to the UCMJ by the National Defense Authorization Act for Fiscal Year 2014 (FY 2014 NDAA).[7] Article 6b is based on the Crime Victims' Rights Act, 18 U.S.C § 3771. H.R. REP. NO. 113-102, pt. 1, at 161 (2013) ("The articulated rights and procedures are similar, but not identical to those set forth in section 3771 of title 18, United State Code."); STAFF OF H. COMM. ON ARMED FORCES, 113TH CONG., LEGISLATIVE TEXT & JOINT EXPLANATORY STATEMENT TO ACCOMPANY H.R. 3304, PUBLIC LAW 113–66 at 702 (Comm. Print 2013) ("The agreement includes the House provision with a clarifying amendment.").

Sentencing evidence is also subject to the requirements of Mil. R. Evid. 403. *United States v. Hursey*, 55 M.J. 34, 36 (C.A.A.F. 2001) (citing *United States v. Rust*, 41 M.J. 472, 478 (C.A.A.F. 1995)). When the military judge conducts a proper balancing test under Mil. R. Evid. 403 on the record, the ruling will not be overturned absent a clear abuse of discretion; the ruling of a military judge who fails to do so will receive correspondingly less deference. *Id.* at 36; *Manns*, 54 M.J. at 166. Here, the military judge conducted a Mil. R. Evid. 403 balancing test on the record and, indeed, sustained Defense's objections to the mother's and stepfather's statements on that basis.

Appellant raises several reasons why, in his view, the military judge erred in admitting the victim impact statements: (1) that the declarant was not a "victim" for purposes of R.C.M. 1001A for the crimes of possessing and viewing child pornography (as opposed to other crimes—not committed by Appellant—of child sexual assault and production of child pornography); (2) that the statements violated the Prosecution's discovery obligations; (3) that the Prosecution did not submit any evidence to lay the foundation

---

[7] Pub. L. No. 11333, § 1701(b)(2)(A), 127 Stat. 953–54 (2013).

and authentication for the admission of the victim impact statements under R.C.M. 1001A.

## A. "Victim" of Child Pornography

As he did at trial, Appellant asserts that R.C.M. 1001A does not apply to his case because a minor depicted within an image of child pornography is not a "crime victim" for purposes of the rule for the offenses of possessing and viewing child pornography. He is mistaken. R.C.M. 1001A(b)(1) defines a "crime victim" as "an individual who has suffered direct physical, emotional, or pecuniary harm as a result of the commission of an offense of which the accused was found guilty." The Supreme Court has recognized that child pornography is a continuing crime and a child depicted in the images is victimized each time the images are downloaded and viewed. *Paroline v. United States*, 134 S. Ct. 1710, 1716–17 (2014). The declarant of the January 2013 statement puts it thus:

> [E]ach additional time that another person downloads and sees the computer images that are now known as the "Vicky series" it does me immeasurable additional harm. I am hurt every time I hear about another criminal case that involves my images. . . . It seems the cases will never stop coming. . . . Each one means an additional hurt to me. This hurt is over and above the general "aching" in my heart that is always there. It tells me someone else was enjoying my pain. . . . My knowledge that this defendant was among those who have downloaded, looked at, and enjoyed the pictures of me at my most vulnerable has caused me more and real psychological and emotional hurt and pain.

## B. Discovery Violation

In his PTA, Appellant agreed to "waive all motions which may be waived under the Rules for Courts-Martial, including motions such as motions to suppress, compel production of Defense Computer Forensics Laboratory prosecution witnesses, etc." Despite this, at trial, Appellant's trial defense counsel objected to the statements as "a discovery violation to R.C.M. 701." However, in discussing his claims of a discovery violation, trial defense counsel later conceded: "As far as the pretrial agreement, I can't provide a motion . . . ."

The "waive all motions" provision is a valid component of a PTA and, if agreed upon, prevents Appellant from raising by motion a discovery violation. *United States v. Cron*, 73 M.J. 718, 732–34 (A.F. Ct. Crim. App. 2014). While neither trial defense counsel nor Appellant identified the discovery motion as one they contemplated waiving through the PTA, the military judge had a

robust discussion with Appellant during his PTA inquiry about the meaning of this provision, including:

> MJ: In particular, do you understand that this term of your pretrial agreement precludes this court or any appellate court from having the opportunity to determine if you are entitled to any relief based upon these motions?
>
> ACC: Yes, sir.

Ordinarily, appellate courts "do not review waived issues because a valid waiver leaves no error to correct on appeal." *United States v. Ahern*, 76 M.J. 194, 197 (C.A.A.F. 2017) (citing *United States v. Campos*, 67 M.J. 330, 332 (C.A.A.F. 2009)). However, we recognize that this court is permitted, under Article 66(c), UCMJ, 10 U.S.C. § 866(c), to review issues affirmatively waived by an appellant at trial. *United States v. Chin*, 75 M.J. 220, 223 (C.A.A.F. 2016) ("CCAs are required to assess the entire record to determine whether to leave an accused's waiver intact, or to correct the error."). Under R.C.M. 1001A(e)(1), a victim is not obligated to disclose the contents of an unsworn victim impact statement until after the announcement of findings. Accordingly, after having reviewed the entire record, we do not believe that the statements were disclosed to the Defense in an untimely fashion, and we leave Appellant's waiver of this issue intact.

## C. Foundation and Authentication

Appellant asserts that the Prosecution did not submit any evidence to authenticate the statements, lay a proper foundation for admission under R.C.M. 1001A, or to establish that the sentiments espoused in the statements—written before Appellant committed his offenses—were still reflective of the impact on the victim. "When the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist." Mil. R. Evid. 104(b). The evidence necessary to establish a proper foundation need not itself be admissible under the Military Rules of Evidence, except those pertaining to privileges. Mil. R. Evid. 104(a). However, averments of counsel are not evidence and are insufficient to authenticate or otherwise establish an evidentiary foundation. "[W]e must emphasize that neither a summary nor an offer of proof can serve as a proper evidentiary foundation when a party objects on grounds of the existence or sufficiency of such foundation." *United States v. Eastman*, 20 M.J. 948, 951 (A.F.C.M.R. 1985).

Victim impact evidence is a form of aggravation evidence that, with a proper foundation, the Prosecution may introduce during a sentencing hearing under R.C.M. 1001(b)(4). Victim impact is also an appropriate topic for a sworn or (in the case of non-capital cases) unsworn statement offered by a

victim in exercising his or her right to be reasonably heard during a sentencing hearing under R.C.M. 1001A(c). For an unsworn statement, the victim may offer the statement orally, in writing, or both. R.C.M. 1001A(e). While the Prosecution did not indicate whether they were offering the statements under R.C.M. 1001(b)(4) or R.C.M. 1001A(e), both the trial defense counsel and the military judge treated the Prosecution's offer as a victim exercising her right to be reasonably heard under R.C.M. 1001A.[8] The rules of evidence had not yet been relaxed on behalf of the Defense. The Prosecution did not attempt to lay the necessary foundation for admission of hearsay victim impact statements under R.C.M. 1001(b)(4) and it appears that, *sub silentio*, the Prosecution was offering the statements under R.C.M. 1001A. An obvious and necessary foundational predicate for a statement offered under R.C.M. 1001A is that the *victim* (not just the Prosecution) wishes the court to consider the statement.

In continuing crime cases, such as possession and viewing of child pornography, there is no requirement that a victim prepare a separate statement for each individual case. Moreover, the fact that a victim impact statement was authored before an accused's criminal acts does not necessarily make the statement irrelevant to the accused's offenses. However, there must be some evidence establishing a foundational nexus between the victim impact described in the statement and the subsequent offenses committed by the accused. The evidence must establish that the accused's offenses impacted the victim at some point in the manner described in the statement, whether or not the victim continues to be impacted to the same degree, or even it all, by the time of trial. The fact that the victim may be suffering a lesser impact at the time of trial does not necessarily make the statement stale, but it may be a matter in mitigation. However, in conducting the required Mil. R. Evid. 403 balancing test, the military judge should consider the length of time since the statement was authored and the degree of lessened victim impact (if any) by the time of trial to ensure that the probative value of a statement prepared in advance of the trial is not substantially outweighed by a danger of unfair prejudice, misleading the sentencing authority, or any of the other listed factors.

Appellant at trial and again before us complains that the Prosecution failed to identify the declarant or declarants of the statements and he characterizes it as a discovery violation. As discussed above, we do not find that any

---

[8] The Prosecution offered all three statements as Prosecution Exhibit 8. This was improper. The statements should have been offered on behalf of the court-martial. R.C.M. 1001A(a). As such, they should have been marked as Court Exhibits.

discovery issues were preserved for review on appeal. Nevertheless, the Prosecution was still obliged to authenticate the statements, including establishing that they are what they purport to be and that the declarants are victims *of Appellant's offenses*—not just child pornography victims generally. In other words, the Prosecution must establish that a victim impact statement was written by a victim of one of the pornographic images Appellant possessed or viewed. None of the unsworn statements are self-authenticating and the Prosecution offered no evidence, other than the redacted statements themselves (with their redacted titles[9]), to establish that the statements are relevant to Appellant's court-martial, to authenticate them as letters written by one of his victims, or to indicate that the victims desired to exercise their right to be reasonably heard at Appellant's sentencing hearing through the statements.[10] Thus, our consideration of these matters is limited, as was the military judge's below, to the content of the statements offered at trial. Assistant trial counsel's averments as to the identity of the declarants and how the statements came into being provide no basis whatsoever to establish any of these threshold requirements.

The assistant trial counsel asserted, purportedly based on the information the Prosecution received from the FBI, that all three statements were from KF, the victim in the "Vicky series" of child pornography. Appellant, in his stipulation of fact, admits that one of the videos he possessed and viewed was from the "Vicky series." However, only one of the statements presented to the military judge mentions the "Vicky series." While the title of the January 2013 statement was redacted like the other two, the body of the statement includes the following: "I am making this supplement to my prior Victim Im-

---

[9] At the Article 32 preliminary hearing, the Government offered a version of the December 2011 statement. That version included the full title of the document, "UPDATED VICTIM IMPACT STATEMENT FROM *VICKY* SERIES VICTIM—December 2011" (emphasis added). In addition, the Government offered the preliminary hearing officer an affidavit from a retired police officer who investigated the underlying "Vicky Series" child sex abuse and production of child pornography offenses. The affidavit provided significant information that would have been useful to authenticate and otherwise lay the foundation for all three unsworn statements offered to the military judge during the sentencing hearing. However, neither the unredacted title of the December 2011 statement nor the investigator's affidavit were offered to the military judge during the sentencing hearing.

[10] In challenging the admission of the statements, the Defense offered Appellate Exhibit IV, which did provide the military judge with some information regarding how the statements came into the possession of the Prosecution and whether the declarant's desired the statements to be considered at Appellant's court-martial.

pact Statements to make clear that each additional time that another person downloads and sees the computer images that are now known as the 'Vicky series' it does me immeasurable additional harm." That sentence sufficiently establishes a link between the January 2013 statement and the video Appellant admitted to possessing and viewing.

However, despite the fact that the Prosecution offered all three statements as a single prosecution exhibit, they are three separate statements, given at different times, and nothing in them (at least not in the form offered to the military judge[11]) links them to each other. Only assistant trial counsel's assertions provided that link, but counsel's assertions are not evidence. The other two statements, the December 2011 statement and the September 2013 statement, lacked any evidence that would have permitted the military judge to determine that they were authentic and, if authentic, relevant to Appellant's court-martial.

With regard to the January 2013 statement that does contain the sole reference to the "Vicky series," unlike the other two statements, it does not contain an express statement that the declarant specifically intended the statement to be used in all future sentencing hearings. In contrast, the other two statements clearly indicate that the declarants intended them to be an exercise of the right to be reasonably heard in any subsequent relevant sentencing hearings. The December 2011 statement includes "I submit the statement to the court for its use in sentencing in cases in which involve my images." The September 2013 statement includes a very similar statement: "I submit the statement to the court for its use in sentencings in cases in which involve my images."

Nonetheless, the January 2013 statement does contain some indication that the declarant intended it to be used in criminal sentencing hearings: "Supplement to Victim Impact Statement . . . . I am hurt every time I hear about another criminal case . . . . Despite feeling hurt each time I learn about another case with my images, I feel strongly that I have a right to know about every case." Furthermore, the trial defense counsel offered Appellate Exhibit IV to the military judge, which trial defense counsel characterized as the "guidance" for use of the victim impact statements offered by the Prosecution. Appellate Exhibit IV included the following:

---

[11] The one statement offered at the Article 32 preliminary hearing suggests that all three statements originally contained titles that would have linked them to the "Vicky series" but the Prosecution inexplicably chose to redact that information before offering them to the military judge.

Guidance for Use of Victim Impact Statement

Title 18, United States Code, Section 3771(a) provides certain rights to victims of federal crimes. Those rights include . . . the right to be reasonably heard at any public proceeding . . . involving . . . sentencing . . . .

To comply with the provisions of 19 U.S.C. § 3771(a)(1), (4), and (8), prosecutors should follow these guidelines when obtaining and using victim impact statements in child pornography cases:

1. When providing this statement, the victim only consented to its use at sentencing, probation, or parole proceedings. . . .

2. Victims may withdraw or revise their statement. Therefore, prosecutors should obtain the statement as close as possible to the sentencing date for each individual defendant, in order to best ensure that the most up-to-date statement is used at that sentencing.

The military judge had no evidence before him to establish that the December 2011 and September 2013 statements were relevant to Appellant's court-martial because no evidence indicated that those statements were written by a victim of the child pornography Appellant possessed or viewed. On the other hand, the January 2013 statement indicated that it was written by the victim of the "Vicky series" child pornography, one video of which Appellant downloaded. The content of the statement, coupled with Appellate Exhibit IV, indicating that the statement was acquired by the Prosecution for Appellant's individual sentencing case for the express purpose of permitting the victim to exercise her right to be reasonably heard, sufficiently laid the foundation for admission of the statement under R.C.M. 1001A. Accordingly, we conclude that the military judge abused his discretion when he admitted the December 2011 and September 2013 statements over Appellant's objection, but did not abuse his discretion with regard to the January 2013 statement.

**D. Prejudice**

Having found error, we must determine whether Appellant was prejudiced. The test for prejudice is whether the error substantially influenced the adjudged sentence. *United States v. Sanders*, 67 M.J. 344, 346 (C.A.A.F. 2009); *United States v. Griggs*, 61 M.J. 402, 410 (C.A.A.F. 2005); *United States v. Boyd*, 55 M.J. 217, 221 (C.A.A.F. 2001). The Prosecution proffered and the military judge accepted that all three statements were from the same victim. Even though we have found that the judge committed error in admitting two of the statements, he properly considered the third one from what he

believed to be the same victim. We are convinced that the admission of the other two statements did not substantially influence the sentence adjudged by the military judge.

## III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and the sentence are **AFFIRMED**.

FOR THE COURT

KURT J. BRUBAKER
Clerk of the Court