UNITED STATES, Appellee

v.

Dennis S. McDONALD, Hospital Corpsman First Class
U.S. Navy, Appellant

No. 00-0544

Crim. App. No. 98 2175

United States Court of Appeals for the Armed Forces

Argued February 6, 2001

Decided June 20, 2001

CRAWFORD, C.J., delivered the opinion of the Court, in which
GIERKE and BAKER, JJ., joined.  SULLIVAN and EFFRON, JJ., each
filed an opinion concurring in the result.


Counsel

For Appellant:  Lieutenant I. L. Paredes, JAGC, USNR (argued);
Lieutenant Mari-Rae Sopper, JAGC, USNR.

For Appellee:  Lieutenant Commander Philip Sundel, JAGC, USNR
(argued); Colonel Marc W. Fisher, Jr., USMC (on brief); Major
Mark K. Jamison, USMC.

Military Judges:  Daniel J. D'Alesio and Kenneth A. Krantz


THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE FINAL PUBLICATION.

Chief Judge CRAWFORD delivered the opinion of the Court.

Pursuant to his pleas, appellant was found guilty of one specification of committing an indecent act upon a child; contrary to his pleas, he was found guilty of forceful sodomy and another specification of committing an indecent act upon the same child, in violation of Articles 125 and 134, Uniform Code of Military Justice, 10 USC §§ 925 and 934, respectively. The convening authority approved the sentence adjudged by the military judge of a dishonorable discharge, 15 years' confinement (partially suspended), total forfeitures, and reduction to the lowest enlisted grade. The Court of Criminal Appeals affirmed the findings and sentence. 53 MJ 593 (2000). We granted review of the following issue:

> WHETHER THE LOWER COURT ERRED IN HOLDING THAT THE SIXTH AMENDMENT'S CONFRONTATION CLAUSE DOES NOT APPLY TO THE PRESENTENCING PORTION OF A COURT-MARTIAL, CONTRARY TO THIS COURT'S DECISION IN UNITED STATES V. GEORGE, 52 MJ 259 (2000).

We hold that the Sixth Amendment's Confrontation Clause does not apply to this presentencing portion of a non-capital court-martial.[*] However, the Fifth Amendment's Due Process Clause does apply there.

---

[*] See United States v. Morrow, 177 F.3d 272, 304 (5th Cir. 1999); United States v. Silverman, 976 F.2d 1502, 1511 (6th Cir. 1992)(en banc), cert. denied, 507 U.S. 990 (1993); United States v. Wise, 976 F.2d 393, 401 and n.3 (8th Cir. 1992)(en banc), cert. denied, 507 U.S. 989 (1993); United States v. Helton, 975 F.2d 430, 434 (7th Cir. 1992); United States v. Beaulieu, 893 F.2d 1177, 1180 (10th Cir.), cert. denied, 497 U.S. 1038 (1990).

2

FACTS

Prior to the presentation of evidence, the prosecutor informed the judge that he intended on calling the victim's father, an active-duty Sergeant Major in the Army serving with the Rapid Deployment Force, located at Fort Stewart, Georgia, who had been present in Jacksonville the day before to testify as an aggravation witness at sentencing. It was not until the night of February 16, 1998, that the victim's father was placed on alert to be at the air field at midnight on the night of February 17 to deploy to the Middle East at 6:00 a.m. that morning because of the crisis with Iraq. The prosecutor proposed moving the trial to Fort Stewart, or taking his testimony by deposition or by telephone. Defense counsel objected that the deposition "would cause undue delay" and the telephone testimony would violate "the Sixth Amendment right to confront" the witness. But the defense offered to stipulate to the testimony. The Government declined to stipulate to the testimony. The judge then proceeded to hear testimony. After the victim testified, the matter came up again.

The judge stated:

> [A]ny attempt to move either all of the court
> personnel or counsel for each side for a
> deposition would involve a major part of a work
> day just in travel time necessary, setup and the
> actual testimony and, with a deploying unit and a
> senior NCO, I think that is simply impracticable.
> As between the two most feasible methods, one
> favored by each side, telephonic testimony, while

> it does not accord face-to-face confrontation, but neither does a stipulation, and affords the opportunity for full cross-examination and to explore issues of opportunity that may be suggested by direct examination, it appears to be -- given that neither method will show the witness' visual demeanor, to give a more nearly full rendition of the testimony than a written stipulation can in circumstances where the witness is pretty clearly unavailable and there is no dispute as the underlying facts surrounding the unavailability.

The Government earlier announced it was fully prepared to bear the cost of moving the proceedings or conducting a deposition at the other post and did not assert any reasons other than those mentioned by the judge that precluded hearing the testimony of the other witnesses the next day.  There is nothing in the record indicating why the interests of the other witnesses outweighed the impact on the court-martial of a one-day delay for such proceedings or deposition.

The court below held "that the Confrontation Clause does not apply to post-conviction, non-capital, presentence proceedings," and thus, the Confrontation Clause does not prohibit taking testimony on the telephone.  The Court of Criminal Appeals recognized that this Court has not previously addressed this question.  53 MJ at 598.

## DISCUSSION

The federal, state, and military criminal law systems share a number of traditional sentencing goals including rehabilitation, specific deterrence, general deterrence,

4

incapacitation, retribution, and restitution.  See, e.g., United States v. Lania, 9 MJ 100 (CMA 1980).

There are, however, differences as well as similarities among the military, federal, and state sentencing procedures. Cf. United States v. Lacy, 50 MJ 286, 287 (1999).  The military justice system also differs because sentencing includes consideration of morale, as well as good order and discipline, together with unique penalties, such as punitive separation, reduction in rank, and forfeiture of pay.  The issue in this case requires us to examine Constitutional, Codal, and Manual for Courts-Martial provisions applicable to sentencing in the military.

Constitution.  The Fifth Amendment provides: "No person shall be ... deprived of life, liberty, or property, without due process of law...."  The Sixth Amendment provides: "[T]he accused shall enjoy the right ... to be confronted with the witnesses against him; [and] to have compulsory process for obtaining witnesses in his favor."  The latter provisions were codified in Article 46, UCMJ, 10 USC § 846, which provides that the "defense counsel ... shall have equal opportunity to obtain witnesses and other evidence in accordance with such regulations as the President may prescribe."

The Supreme Court has interpreted both the Due Process Clause and the Sixth Amendment right of compulsory process and

confrontation in connection with federal sentencing procedures.
A fundamental requirement of due process is that individuals
subjected to proceedings by the Government are entitled to the
safeguards established in the governing statutes and
regulations, and that the Government must follow the prescribed
procedures, regardless whether they are constitutionally
required.  Vitarelli v. Seaton, 359 U.S. 535 (1959); United
States ex rel. Accardi v. Shaughnessy, 347 U.S. 260 (1954).  The
present case ultimately involves the question whether the
procedure comported with due process in terms of compliance with
the safeguards established in the applicable Rules for Courts-
Martial and Military Rules of Evidence.

In Williams v. New York, 337 U.S. 241, 245 (1949), the
Court rejected a "broad constitutional challenge" to the "New
York procedural policy [that] encourages [the judge] to consider
information about the convicted person's past life, health,
habits, conduct, and mental and moral propensities in the
context of a death sentence."  Justice Black, speaking for the
Court, noted that

> both before and since the American colonies became
> a nation, courts in this country and in England
> practiced a policy under which a sentencing judge
> could exercise a wide discretion in the sources and
> types of evidence used to assist him in determining
> the kind and extent of punishment to be imposed within
> limits fixed by law.  Out-of-court affidavits have
> been used frequently, and of course in the smaller
> communities sentencing judges naturally have in mind

> their knowledge of the personalities and backgrounds of convicted offenders.

Id. at 246 (footnote omitted).

The judge's task requires consideration of "the fullest information possible concerning the defendant's life and characteristics." Id. at 247. The Court acknowledged the need for presentence reports, id. at 249, and "recognize[d] that most of the information now relied upon by judges to guide them in the intelligent imposition of sentences would be unavailable if information were restricted to that given in open court by witnesses subject to cross-examination." Id. at 250. In light of the need for individualized sentences, the Court could not "say that the due process clause renders a sentence void merely because a judge gets additional out-of-court information." Id. at 252.

In Specht v. Patterson, 386 U.S. 605 (1967), the Court held that there was a denial of due process when sentence enhancers (such as the defendant is "an habitual offender and mentally ill") were used "(1) without a hearing at which ... [he] may confront and cross-examine adverse witnesses and present evidence of his own by use of compulsory process, if necessary; and (2) on the basis of hearsay evidence to which ... [he was] not allowed access." The Court found the sentence enhancer "radically different" from the Williams "situation." Id. at 608. The High Court reaffirmed that position in McMillan v.

7

Pennsylvania, 477 U.S. 79, 91-92 (1986), concluding that preponderance of the evidence was an adequate burden of proof to establish a fact that in turn invoked a mandatory minimum sentence.

In summary, the Constitution requires that evidence admitted during sentencing must comport with the utilitarian purpose of the Due Process Clause, i.e., reliability, and procedural-due-process requirements.  In contrast to federal civilian sentencing in non-capital cases, sentencing in the military justice system, even in non-capital cases, is adversarial based on the procedure established by Congress and the President.  Thus, in addition to looking at the constitutional sources of rights, we must also examine the Code, the Manual, and the Military Rules of Evidence to determine whether greater rights are given to military defendants.

Statute.  Subchapter VIII of the Uniform Code of Military Justice sets forth the Articles on sentencing.  Generally, it gives discretion to the court-martial to determine an appropriate sentence within "such limits as the President may prescribe" for the offense for which the accused has been convicted.  Article 56, 10 USC § 856.  These rules are set forth in the Manual for Courts-Martial.

### Procedure and Evidence

Manual for Courts-Martial.  Article I, § 8, clause 14, gives Congress the discretion to create a military criminal law system, and Article 36(a), UCMJ, 10 USC § 836(a), authorizes the President to promulgate Rules for Courts-Martial for sentencing. RCM 1001-1009, Manual for Courts-Martial, United States (2000 ed.).  These rules have evolved over time.  Denise K. Vowell, To Determine an Appropriate Sentence:  Sentencing in the Military Justice System, 114 Mil.L.Rev. 87 (1986).  Except when there is a mandatory sentence, the sentence within Presidential or Codal limits is left to the discretion of the sentencing authority. RCM 1001 establishes the order of presentation, form, and general substance of admissible evidence during the sentencing procedures.  The Drafters stated that RCM 1001

> allows the presentation of much of the same information to the court-martial as would be contained in a presentence report, but it does so within the protections of an adversarial proceeding ... although they [the rules] may be relaxed for some purposes.  See subsections (b)(4) and (5), (c)(3), (d), and (e) of this rule.

Drafters' Analysis, Manual, supra at A21-69.  Under that rule an accused has a limited right to production of witnesses (RCM 1001(e)(1)) and the right to cross-examination of witnesses (RCM 1001(c)(3)).  See Art. 46, UCMJ, 10 USC § 846.  The Military Rules of Evidence are applicable to sentencing, see Analysis of RCM 1001, Manual, supra at A21-69; thus providing procedural

safeguards to ensure the reliability of evidence admitted during sentencing. Mil.R.Evid. 1101, Manual, supra. Under Mil.R.Evid. 1101(c), the Rules of Evidence "may be relaxed in sentencing procedures as provided under RCM 1001 and otherwise as provided in this Manual."

RCM 1001(b)(4) relaxes the rules of evidence concerning the prosecution's evidence in aggravation in non-capital cases by providing that "a written or oral deposition taken in accordance with RCM 702 is admissible." RCM 1001(e) governs production of witnesses. RCM 703(c)(2) requires the defense to provide trial counsel with a list of witnesses whose production is requested, including the reasons why production of the witnesses is necessary under RCM 1001(e). Subsection 1 of that Rule sets out general guidance on the production of witnesses by providing that "[d]uring the presentence proceedings, there shall be much greater latitude than on the merits to receive information by means other than testimony presented through the personal appearance of witnesses." It goes on to state: "Whether a witness shall be produced to testify during presentence proceedings is a matter within the discretion of the military judge, subject to the limitations in subsection (e)(2)."

A "witness may be produced to testify during presentence proceedings through a subpoena or travel orders at Government expense only if" certain criteria are met, including a

determination that "[o]ther forms of evidence, such as oral depositions, written interrogatories, or former testimony would not be sufficient to meet the needs of the court-martial in the determination of an appropriate sentence." RCM 1001(e)(2) and (D) (emphasis added). A balancing test is applied by the judge who measures whether the "significance of the personal appearance of the witness to the determination of an appropriate sentence, when balanced against the practical difficulties of producing the witness, favors production of the witness." RCM 1001(e)(2)(E). See also United States v. Combs, 20 MJ 441 (CMA 1985); United States v. Loya, 49 MJ 104 (1998).

In summary, the President has provided rules to ensure "relevant and reliable" evidence. United States v. Ariail, 48 MJ 285, 287 (1998). See also United States v. Prevatte, 40 MJ 396, 397 n.* (CMA 1994). With respect to the prosecution's evidence in aggravation, the safeguards in the Rules of Evidence apply. Id. RCM 1001(e)(2)(D) permits the Rules to be relaxed only to the extent that the testimony is offered in "forms of evidence such as" an oral or written deposition. This rule does not preclude taking testimony by telephone.

In the present case the testimony at issue was from the victim's father. As he was part of the prosecution's case in aggravation, his testimony was subject to the provisions of RCM 1001(b)(4). Cf. RCM 1001(e). The prosecution's offer to take

and present the witness' testimony by deposition certainly would have comported with the Rules.  The military judge, however, decided to take the testimony by telephone.  The defense objected both to the deposition and to the telephone testimony.

Both political branches of Government have considered this matter and have authorized depositions.  Neither have prohibited testimony by telephone during sentencing.  The military judge, faced with an unusual situation and the likelihood that the testimony would be temporarily lost, had to craft a creative solution to meet the needs of a party or unforeseen military exigency.

Similarly we need not decide whether the President may authorize presentencing testimony in aggravation by means other than the specific examples given in the rules.  The relative merits of depositions versus other forms of testimony, including telephone conferencing, are matters to be assessed in the process set forth in Article 36 -- in terms of opportunities for examination, cross-examination, and impact on the deliberations -- which will determine the scope and content of such rules, if any.

We hold that the Court of Criminal Appeals was correct in holding that the Confrontation Clause does not apply.  United States v. George, 52 MJ 259 (2000), does not compel a different result.  The Court in George held that admission of evidence of

12

"future risks" was harmless error under the circumstances.  Id. at 262.  The Court did not decide whether the Sixth Amendment applied to sentencing testimony, because it assumed the error was constitutional in nature in light of George's assertion and the Government's concession that the error was of constitutional magnitude.  Id. at 261.  Unlike George, there is no government concession in this case or an unchallenged holding by the court below that there was error.  Since Congress would not be disabled from changing the sentencing procedures in the military, it is only logical to conclude that the Sixth Amendment right of confrontation does not apply to the presentencing portion of a non-capital court-martial.

However, under Williams, the Due Process Clause requires that the evidence introduced in sentencing meet minimum standards of reliability.  Those requirements were met here. There is no evidence to suggest that the victim's father's testimony was unreliable or his identity questioned. Additionally, there was notice to the defense, right to counsel, right of cross-examination, and a presentation of the evidence by telephone to the judge as the sentencing authority.  The record establishes that the "practical difficulties of producing a witness," including the cost and timing, were such that the judge did not abuse his discretion in allowing the victim's father's testimony to be taken by telephone.  Cf. United States

13

United States v. McDonald, No. 00-0544/NA

v. Hill, 4 MJ 33, 37 n.18 (CMA 1977).  See also United States v.

Rich, 12 MJ 661, 663 n.3 (ACMR 1981).  In any event, any error

in this case was harmless.  We do not suggest that telephone

testimony is appropriate in all cases.  Manual guidance to the

military judge during sentencing is sufficient to ensure the

proper balance between obtaining needed testimony and

safeguarding rights of the accused.

The decision of the United States Navy-Marine Corps Court

of Criminal Appeals is affirmed.

SULLIVAN, Judge (concurring in the result):

This was a trial by military judge alone (Article 16(1)(B),

Uniform Code of Military Justice, 10 USC § 316(1)(B)), and

appellant's sentence was determined by a judge using the Rules

for Courts-Martial promulgated by the President under Article

36(a), UCMJ, 10 USC § 836(a). See RCM 1001-1009, Manual for

Courts-Martial, United States (1995 ed). Appellant objected to

the admission of sentencing testimony by the victim's father,

over the telephone, offered by the prosecution as aggravation

evidence.

There is no express provision in the Military Rules of

Evidence authorizing the taking of testimony for sentencing by

telephone. However, RCM 1001(e)(1) might be broad enough to

allow this sentencing procedure. [1] It states:

---

[1] This Manual rule is based in part on Article 46, Uniform Code
of Military Justice, 10 USC § 846. It states:

> **§ 846. Art. 46. Opportunity to obtain**
> **witnesses and other evidence**
>
> The trial counsel, the defense counsel,
> and the court-martial shall have equal
> opportunity to obtain witnesses and other
> evidence <u>in accordance with such</u>
> <u>regulations as the President may</u>
> <u>prescribe</u>. Process issued in court-
> martial cases to compel witnesses to
> appear and testify and to compel the
> production of other evidence shall be
> similar to that which courts of the United
> States having criminal jurisdiction may
> lawfully issue and shall run to any part

    (e) <u>Production of witnesses</u>.

    (1) <u>In general</u>. <u>During the presentence proceedings, there shall be much greater latitude than on the merits to receive information by means other than testimony presented through the personal appearance of witnesses</u>. Whether a witness shall be produced to testify during presentence proceedings is a matter within the discretion of the military judge, subject to the limitations in subsection (e)(2) of this rule.

**Discussion**

    See R.C.M. 703 concerning the procedures for production of witnesses.

    (2) <u>Limitations</u>. A witness may be produced to testify during presentence proceedings through a subpoena or travel orders at Government expense only if—

    (A) The testimony expected to be offered by the witness is necessary for consideration of a matter of substantial significance to a determination of an appropriate sentence, including evidence necessary to resolve an alleged inaccuracy or dispute as to a material fact;

    (B) The weight or credibility of the testimony is of substantial significance to the determination of an appropriate sentence;

    (C) The other party refuses to enter into a stipulation of fact containing the matters to which the witness is expected to testify, except in an extraordinary case when such a stipulation of fact would be an insufficient substitute for the testimony;

---

of the United States, or the Territories, Commonwealths, and possessions.

(Emphasis added.)

2

> (D) <u>Other forms of evidence,
> such as oral depositions, written
> interrogatories, or former testimony would
> not be sufficient</u> to meet the needs of the
> court-martial in the determination of an
> appropriate sentence; and

> (E)  The significance of the
> personal appearance of the witness to the
> determination of an appropriate sentence,
> when balanced against the practical
> difficulties of producing the witness,
> favors production of the witness.  Factors
> to be considered include the costs of
> producing the witness, the timing of the
> request for production of the witness, the
> potential delay in the presentencing
> proceeding that may be caused by the
> production of the witness, and the
> likelihood of significant interference
> with military operational deployment,
> mission accomplishment, or essential
> training.

(Emphasis added in text.)

Nevertheless, appellant rests his right-of-confrontation claim on the Sixth Amendment and the Supreme Court's decision in <u>Specht v. Patterson</u>, 386 U.S. 605 (1967).  He contends that where sentencing is done in "an adversarial criminal proceeding" (<u>see generally</u> <u>Middendorf v. Henry</u>, 425 U.S. 25, 35 (1976)), he is entitled to his full Sixth Amendment rights, including the right to confront and cross-examine the witnesses against him.  <u>See also</u> <u>United States v. Castellanos</u>, 904 F.2d 1490, 1496 (11th Cir. 1990).  He further avers that sentencing at a court-martial is an adversarial criminal proceeding subject to the Sixth Amendment.

I agree with the majority that the Sixth Amendment does not require an adversarial sentencing proceeding with a right of

3

confrontation.  See Williams v. New York, 337 U.S. 241 (1949).

Nevertheless, the President, as authorized by Congress, has

provided a limited adversarial sentencing proceeding with a

limited right of confrontation in the court-martial system.  See

RCM 1001(e).  See generally Weiss v. United States, 510 U.S. 163,

176-81 (1994).  The purpose of this proceeding is to determine an

"appropriate sentence."  RCM 1001 (a)(1).

In my view, Specht v. Patterson, supra at 608, did not

address a sentencing hearing of this type.  There, after

conviction, "a new finding of fact" by the judge was required by

Colorado law ("whether a person constitutes a threat of bodily

harm to the public, or is an habitual offender and mentally

ill"), which was to serve as the basis for criminal commitment of

an accused beyond that authorized for his original conviction.

The Supreme Court held that this procedure, in effect, amounted

to an additional criminal proceeding under the Colorado Sex

Offenders Act.  Such a proceeding is clearly not the same as the

continuous sentencing procedure at courts-martial, so I conclude

that Specht is not applicable to appellant's case.

Today, the sentencing procedures at courts-martial have

become more akin to those now in the federal court system which

do not require Sixth Amendment confrontation.  See United States

v. Wise, 976 F.2d 393, 398 n.2 (8th Cir. 1992).  However, as

noted in the majority opinion, federal cases clearly recognize a

4

limited Fifth Amendment right to confrontation at these proceedings.  See United States v. Goldfaden, 959 F.2d 1324, 1330 (5th Cir. 1992).  Courts-martial sentencing procedures clearly meet minimum Fifth Amendment due process standards in the sense that they do provide an accused "adequate notice of and an opportunity to rebut or explain information that is used against him."  (E.g., RCM 1001(d) (rebuttal and surrebuttal)).  See United States v. Beaulieu, 893 F.2d 1177, 1181 (10th Cir.), cert. denied, 497 U.S. 1038 (1990).  In my view, the telephonic portion of appellant's sentence hearing did not deny him adequate due process; even if error did occur, either under the Manual or the Fifth Amendment, it was harmless beyond a reasonable doubt as explained by Judge Effron in his separate opinion.

EFFRON, Judge (concurring in the result):

I agree with the majority opinion that the use of telephonic testimony did not violate the Sixth Amendment. I respectfully disagree, however, with the opinion's conclusion that the military judge did not abuse his discretion when he permitted testimony by telephone in this case.

In the present case, the proponent of the testimony -- the prosecution -- offered to take and present the witness' testimony by deposition. The military judge erred by not ordering a deposition as requested. Use of a deposition during sentencing is authorized expressly in RCM 1001(b)(4), Manual for Courts-Martial, United States (2000 ed.), which governs the prosecution's evidence in aggravation in non-capital cases. The Rule allows two forms of evidence other than in-court witness testimony – oral and written depositions. RCM 702 provides detailed rules for the conduct of oral and written depositions. An oral deposition proceeds in the same manner as testimony at trial, with oral examination and cross-examination by counsel. In a written deposition proceeding, the questions are prepared in advance and are propounded by the deposition officer. In both formats, the parties are represented by counsel, the witness provides verbal answers, and the proceedings are recorded by a reporter or on videotape, audiotape, or sound film. In the present case, for example, the deposition could have

been recorded on videotape and replayed during the court-martial. By contrast, there are no procedural safeguards specified for telephonic testimony, and the demeanor of the witness cannot be observed by counsel or the court-martial.

Although the telephone is a well-established means of communication that long predates videotape, the President has not authorized telephonic depositions or testimony in the circumstances of the present case. The majority opinion's reliance on RCM 1001(e)(2)(D) as authority for telephonic testimony is misplaced. That Rule simply provides that the Government is not obligated to produce a live witness through a subpoena or travel orders unless "[o]ther forms of evidence, such as oral depositions, written interrogatories, or former testimony would not be sufficient to meet the needs of the court martial in the determination of an appropriate sentence." The reference in that Rule to three traditional forms of evidence with established roots in the Manual provides no authority for the creation of novel forms of evidence on behalf of the prosecution. Because the President has not authorized telephonic testimony by the prosecution when presenting evidence in aggravation under RCM 1001(b)(4), such testimony is not admissible unless it otherwise would be admissible under the Rules of Evidence.

If the military judge in the present case had granted the prosecution's request to take the testimony of the sentencing witness by deposition, his action would have comported with the

Rules.  The military judge, however, decided to take the testimony by telephone.  This is not a case in which the military judge was faced with an unprecedented situation involving, for example, a military exigency in which testimony would be lost unless he crafted a creative solution.  Although the witness' deployment was imminent, the military judge could have used an authorized procedure, a deposition, that was fully acceptable to the Government -- the party that was the proponent of the witness.  The only reasons the military judge gave on the record for rejecting a deposition were based on administrative efficacy:  other witnesses would be inconvenienced and the trial would not conclude as swiftly as anticipated if a day were taken for the deposition at another post.  In the absence of a compelling necessity for creating a judicial exception to RCM 1001(b)(4), the military judge erred by not ordering a deposition.  The question of whether telephonic testimony should be permitted in sentencing proceedings is a matter that should be addressed in the Manual after careful consideration in the rulemaking process, not through judicial decisions at the trial and appellate levels in a case involving administrative convenience.

I agree with the ultimate conclusion reached by the majority opinion, however, because the error was harmless in this case.  The defense was allowed to cross-examine the witness and did not develop any significant issues.  The accused was tried by a military judge alone and the judge ruled that he

would not consider the impact of the witness' deployment as an aggravating factor.  In a bench trial, the "prejudicial impact of erroneously admitted evidence is . . . substantially less than it might have been in a jury trial."  United States v. Cacy, 43 MJ 214, 218 (1995), quoting United States v. Cardenas, 9 F.3d 1139, 1156 (5th Cir. 1993), cert. denied, 511 U.S. 1134 (1994).